UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER DEMARCO, an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NORTHWESTERN MEMORIAL HEALTHCARE and NORTHWESTERN MEMORIAL HOSPITAL, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) 10 C 397 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer DeMarco brought this lawsuit against Northwestern Memorial Hospital ("NMH") and Northwestern Memorial Healthcare, alleging that she and others similarly situated were denied overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and Illinois common law. Defendants have moved for summary judgment. The motion is granted as to Northwestern Memorial Healthcare, and granted in part and denied in part as to NMH.

**Background**

The facts are stated as favorably to DeMarco as the record permits. DeMarco, a registered nurse, worked for NMH from March 2001 to October 2009. She was a Staff Nurse until November 2007, when she was promoted to Clinical Coordinator, a supervisory position. DeMarco alleges that she worked uncompensated, off-the-clock time for which she is owed overtime. The work took place during three time periods: (1) what were supposed to be

uninterrupted thirty-minute meal breaks; (2) after she clocked out from her scheduled shifts; and (3) on one occasion when she was a patient at NMH.

### A. Work During Meal Breaks

Prior to 2003, NMH employees recorded their working hours on written time cards. In 2003 or 2004, NMH began using an Automated Time Reporting ("ATR") system. The system automatically deducts a thirty-minute meal break from shifts of at least five-and-one-half hours. Employees are not compensated for those thirty minutes on the assumption that they received an uninterrupted meal break. *See* 29 C.F.R. § 785.19(a) ("worktime" does not include a "bona fide meal period" of thirty minutes or longer so long as the employee is "completely relieved from duty" during the period). The ATR system displays a "cancel lunch" button on its interface that, if pressed, overrides the automatic thirty-minute deduction when an employee is unable to take an uninterrupted meal break.

Nurses were required to keep their pagers with them during meal periods and to respond to calls as necessary, and were subject to other interruptions by managers and co-workers. As a result, DeMarco rarely was able to take an uninterrupted thirty-minute meal break. DeMarco asserts that employees had to obtain authorization from their managers before using the "cancel lunch" button and that she did not request such approval due to an implicit understanding that it "just wasn't done." Doc. 68-1 at 34. Early in her tenure at NMH, however, when DeMarco told her then-manager, Patty Lazzarra, that she had been unable to take a lunch break, Lazzarra instructed her to use the "cancel lunch" button, which she did. DeMarco used the "cancel lunch" button on at least seven other occasions, which NMH honored by restoring thirty minutes of paid work time on those days. DeMarco admits that she "sometimes" reviewed her time records, and

that when she did she never found anything to correct. DeMarco denies, however, that the time records accurately reflect the hours she worked.

A training video provided to hourly employees dedicates two minutes to mandatory meal breaks, and indicates that a manager or designee must approve use of the "cancel lunch" button. A reference guide available on an employee website explains how to "cancel lunch" on the ATR system. NMH's human resources policy states, "Employees who work through their meal break should enter a function key at the time reader to notify their managers of this missed meal. Manager review and approval of the timecard will be required for payment of the meal time." Doc. 53-9 at 18; Doc. 53-10 at 2-3. NMH's code of ethics provides that accurate completion of time cards is essential and that employees must report the actual hours they worked. NMH's "Rules for Personal Conduct" require employees to avoid "forging, altering, falsifying, [or] omitting" information on time cards. Doc. 53-7 at 19.

When DeMarco told her managers that she and nurses in the unit she supervised were unable to take uninterrupted meal breaks, the managers told her that such breaks had to be taken. Written training materials provided to Clinical Coordinators conveyed the same message. At one point, DeMarco received an "action plan" from her then-manager, Rita Walters, instructing her to "ensure that she take[] a break and that all staff take a break to prevent burnout and to foster a healthy working environment." Doc 68-1 at 20. Walters suggested that DeMarco keep snacks in her office in case she was unable to take a meal break; Walters later followed up to ask whether DeMarco had created space in her cabinet for snack foods. The inability of nurses to take meal breaks and NMH's "Take a Break Project" was discussed during a 2009 staff meeting attended by DeMarco and her then-manager, Crystal Halloway, who asked DeMarco and other nurses to submit ideas on how "that [ensuring that nurses take breaks] could better be done." *Id*.

at 15. However, DeMarco was not given instruction regarding how to enforce the meal break policy, and DeMarco's managers usually turned down her requests to staff an additional nurse for the purpose of allowing nurses to take breaks.

### B. Post-Shift Work

After DeMarco became a Clinical Coordinator, she occasionally would work after clocking out at the end of her shift. Ordinarily, DeMarco's managers had left work by the time she finished her shift, but on at least one occasion she told her then-manager, Rachel Rush, that she had continued to work after clocking out, to which Rush responded, "You're not supposed to do that." Doc. 68-1 at 51. DeMarco was subject to competing pressures—concern about getting in trouble for working after her shift, but feeling compelled to finish her tasks. No manager ever told DeMarco to work off the clock, but the demands of the job created pressure to do so. Employees were reminded on nearly a "daily basis" that NMH was over budget and were reprimanded for clocking out late. Doc. 68-1 at 49.

### C. Work While a Patient

On one occasion in June 2009, DeMarco worked between 3:00 and 4:00 a.m. while hospitalized as a patient at NMH. She never notified NMH or any of her managers of this work time and never asserted a right to compensation for that time.

### Discussion

### I. Claims Against Northwestern Memorial Healthcare

Northwestern Memorial Healthcare contends, among other things, that it cannot be held liable because it was not DeMarco's employer. DeMarco does not dispute this submission, thus forfeiting the point. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (party forfeits arguments not raised in brief opposing summary judgment); *Palmer v. Marion Cnty.*,

327 F.3d 588, 597–98 (7th Cir. 2003) (claim deemed abandoned where plaintiff "failed to delineate his negligence claim in his district court brief in opposition to summary judgment"). Accordingly, summary judgment is granted to Northwestern Memorial Healthcare.

## II.     Claims Against NMH

### A.     FLSA and IMWL Claims

The FLSA and IMWL claims are considered together because IMWL incorporates FLSA standards by reference. *See Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993) (because FLSA and IMWL overtime provisions are "coextensive …, if the system used by Sysco to compensate Condo for working overtime complies with the FLSA, it also complies with [IMWL]" ); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 1987) (IMWL overtime provision "parallels" analogous FLSA provision); 56 Ill. Admin. Code § 210.120.  FLSA's overtime provision states that "no employee shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The term "employ" is defined as "to suffer or permit work."  *Id*. § 203(g).  The regulations make clear that "[w]ork not requested but suffered or permitted is work time," 29 C.F.R. § 785.11, and that "[i]f the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked," *id*. § 785.12.  Consistent with the regulations, the cases hold that work is "suffered or permitted" only if the employer has actual or constructive knowledge that the employee performed uncompensated work.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011) (citing cases); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 504 (3d Cir. 2009); *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997); *Bailey v. Cnty. of Georgetown,* 94

F.3d 152, 157 (4th Cir. 1996); *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998).

NMH argues that summary judgment is warranted because the record indisputably shows that it had neither actual nor constructive knowledge that DeMarco performed off-the-clock work. NMH is correct with respect to the work DeMarco allegedly performed while a patient at the hospital. In any event, DeMarco does not address that work, thus forfeiting the point. *See Witte*, 434 F.3d at 1038. With respect to work during meal breaks and post-shift work, however, NMH's argument cannot be reconciled with the record evidence viewed in the light most favorable to DeMarco.

That evidence, summarized above, would permit a reasonable factfinder to conclude that DeMarco's supervisors had actual or, at a minimum, constructive knowledge that she sustained thirty-minute meal break deductions even when working during those breaks. DeMarco told her managers that she was unable to take uninterrupted meal breaks; although they told DeMarco that such breaks had to be taken, they knew that DeMarco often could not take breaks, and they also knew (perhaps only constructively) that DeMarco had used the "cancel lunch" button only eight times in a career spanning several years. One manager encouraged DeMarco to keep snacks in her office in the event she could not take a meal break, further evidencing NMH's knowledge that DeMarco regularly was not taking such breaks. The widespread inability of nurses to take meal breaks was addressed during a 2009 staff meeting, yet another indication that NMH knew of the problem; indeed, if NMH did not know that nurses were failing to take meal breaks, it would have had no need to for the "Take a Break Project" and no need to solicit ideas as to how to ensure that breaks were taken. This evidence is sufficient to raise a genuine issue of material fact regarding NMH's actual or constructive knowledge. *See Kuebel*, 643 F.3d at 365

("Kuebel has raised a genuine issue of material fact as to whether [his employer] knew he was working off the clock. Kuebel testified that on several occasions, he specifically complained to his supervisor … that he was working more than forty hours per week but recording only forty."). There also is record evidence—DeMarco's telling her manager that she worked after clocking out at the end of her shift—sufficient to raise a genuine issue of material fact regarding NMH's knowledge that DeMarco performed post-shift work.

NMH responds that it cannot have had actual or constructive knowledge of DeMarco's off-the-clock work because DeMarco was instructed to not work off-the-clock, was further instructed to take breaks, was fully capable of pressing the "cancel lunch" button when unable to take an uninterrupted meal break, and did not object to her time sheets after reviewing them. NMH essentially asks: If a large employer allows its employees to record their own time, how can it be liable for failing to pay overtime when a particular employee did not record all the time she worked? And if DeMarco did not record all of her work time, isn't that her fault rather than NMH's? The law answers those questions in DeMarco's favor. The governing regulation provides that NMH cannot shield itself from an FLSA (and thus an IMWL) overtime claim simply by adopting policies that prohibit unreported overtime and that place on DeMarco the onus of recording her own overtime:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. *It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.* Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R § 785.13 (emphasis added); *see Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1072 (N.D. Ill. 2005) (holding that employer "cannot hide behind a policy of

having employees keep their own time to avoid compensating the employees for all overtime hours worked, including unrecorded hours")

The principle is nicely illustrated by *Reich v. Department of Conservation & Natural Resources, State of Alabama*, 28 F.3d 1076 (11th Cir. 1994). The case involved officers employed by the state agency charged with enforcing fish and game laws; the officers worked under minimal supervision in the field and were responsible for filing written reports of their working hours. *Id*. at 1078-79. The agency prohibited the officers from working more than forty hours per week; the officers frequently violated this rule during peak season, but did not document that time on their reports. *Id*. at 1079-80. The evidence indicated that the agency had knowledge—actual knowledge from complaints registered at district meetings, and constructive knowledge from inconsistencies between arrest reports (which showed when arrests were made) and the officers' weekly time sheets—that the officers were working unreported overtime hours. *Id*. at 1080-81, 1083. The district court nonetheless ruled that the agency "could not be charged with knowledge of the overtime violations," reasoning that "supervisors repeatedly told the officers that overtime hours were prohibited." *Id*. at 1083. The Eleventh Circuit reversed. The court explained that given "its specific knowledge that the … policy against overtime was not being followed, the [agency] had a duty to do more than to simply continue to apprise the officers of the policy"; rather, the agency "had an obligation to 'exercise its control and see that the work [was] not performed if it [did] not want it to be performed.'" *Ibid*. (quoting 29 C.F.R. § 785.13) (first bracket added, others in original); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance.") (citing cases). The agency, however, did not comply with that obligation:

> There is no indication in the record that the Department did anything at any time relevant to this litigation to discourage the overtime required by the vast majority of its officers to properly perform their duties other than to promulgate its policy against such work and to urge the officers to "work their best 40." For example, no officer was ever disciplined for violating the forty-hour rule.

*Dep't of Conservation*, 28 F.3d at 1083. Accordingly, the Eleventh Circuit held the agency liable for violating FLSA's overtime provision. *Id*. at 1083-84.

Accepting DeMarco's version of the facts, under which NMH management knew that DeMarco worked unrecorded overtime hours, the same result obtains here. The fact that NMH instructed nurses to take uninterrupted meal breaks and to record all work time did not relieve NMH of its obligation to "exercise its control," *id*. at 1083, and "make every effort," *Gotham Registry*, 514 F.3d at 288, to ensure that DeMarco complied with those directives. *See Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) ("The employer who wishes no such work to be done has a duty to see it is not performed. He cannot accept the benefits without including the extra hours in the employee's weekly total for purposes of overtime compensation. If the employer has the power and desire to prevent such work, he must make every effort to do so."). The summary judgment record indicates that while NMH might have had the right formal overtime policies and urged nurses to comply with them, it did not consistently enforce compliance by discipline or other comparable means. As *Department of Conservation* teaches, simply urging employees to comply with company policy does not protect an employer from FLSA overtime liability when the employer does not enforce the policy despite knowing that it is being disregarded. *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 463 (S.D.N.Y. 2009) (finding FLSA overtime liability where "[t]he record reflects that [the

employer] undertook only minimal measures to ensure compliance," such as giving warnings and posting a bulletin).

Because a reasonable jury could find on this record that DeMarco was suffered or permitted to work unrecorded and uncompensated overtime during meal periods and after her shift, summary judgment is denied on the FLSA and IMWL claims as they pertain to such work.

B.   IWPCA Claim

Unlike FLSA and IMWL, IWPCA does not establish a substantive right to overtime pay. *See Hall v. Sterling Park Dist.*, 2011 WL 1748710, at *6 (N.D. Ill. May 4, 2011). Instead, IWPCA requires an employer to "at least semi-monthly, … pay every employee all wages earned during the semi-monthly pay period," 820 ILCS 115/3, with "wages" defined as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the parties, whether the amount is determined on a time, task, piece, or any other basis of calculation," *id*. 115/2 (emphasis added). As the emphasized text makes clear, IWPCA mandates overtime pay (or any other kind of wage) only to the extent the parties' contract or agreement requires such pay. *See Lopez v. Smurfit-Stone Container Corp.*, 2003 WL 297533, at *3 (N.D. Ill. Feb. 10, 2003) ("The IWPCA [does] not create ... entitlement to overtime wages. In fact, the Seventh Circuit has stated that the IWPCA merely requires 'that the employer honor his contract.'") (quoting *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir.1986)).

NMH contends that its "agreement" with DeMarco—scare quotes are used because NMH means not a written contract or agreement, but an agreement evidenced by the parties' conduct—requires it to pay wages only for hours recorded in NMH's timekeeping system. DeMarco adduces no evidence of *any* agreement between her and NMH, let alone an agreement

-10-

requiring compensation for hours worked but not recorded. Doc. 67 at 14-15 (where DeMarco cites only her complaint, which is not evidence, on the subject of an agreement with NMH). Absent evidence of such an agreement, DeMarco's claim that IWPCA requires overtime pay for unrecorded hours fails as a matter of law. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (rejecting IWPCA claim for bonus pay where employee "has no employment contract setting out the terms of his bonus"); *Grant v. Bd. of Educ. of City of Chicago*, 668 N.E.2d 1188, 1196 (Ill. App. 1996) (rejecting IWPCA claim for payment of accumulated unused sick leave where no contract required such pay); *Skelton*, 382 F. Supp. 2d at 1074-75 (rejecting IWPCA claim for overtime wages where no contract required such wages); *Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *4 (N.D. Ill. June 28, 2005) ("Because GDLP did not breach any contractual obligation to pay overtime, no IWPCA claim exists.").

      **C.    Unjust Enrichment Claim**

Courts in this District and elsewhere routinely hold that FLSA preempts unjust enrichment and other state common law claims that rest on the same factual foundation and seek the same relief as an FLSA claim. *See Kyriakoulis v. DuPage Health Ctr., Ltd.*, 2011 WL 2420201, at *1-2 (N.D. Ill. June 9, 2011); *Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, at *14-16 (N.D. Ill. Oct. 4, 2010) (citing cases); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 658-60 (N.D. Ill. 2007); *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791, at *4-6 (E.D. Va. Sept.11, 2006); *Moeck v. Gray Supply Corp.*, 2006 WL 42368, at *2 (D.N.J. Jan. 6, 2006) (citing cases); *Sorensen v. CHT Corp.*, 2004 WL 442638, at *6-7 (N.D. Ill. Mar.10, 2004); *Johnson v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002); *but see Marquez v. Partylite Worldwide, Inc.*, 2007 WL 2461667, at *6 (N.D. Ill. Aug. 27, 2007). DeMarco offers no basis to depart from this (nearly universal) consensus. Instead, she maintains that Federal

Rule of Civil Procedure 8(d)(2) "expressly contemplate[s] that a party may plead alternative theories of relief." Doc. 67 at 16. That principle, while undeniably correct, is inapposite where, as here, one of the "theories of relief" fails as a matter of law on preemption or other grounds.

## Conclusion

For the foregoing reasons, summary judgment is granted to Northwestern Memorial Healthcare; all claims against that defendant are dismissed with prejudice. Summary judgment is granted to NMH on the IWPCA and unjust enrichment claims, and on the portion of the FLSA and IMWL claims pertaining to the work DeMarco performed while a patient at NMH; those claims are dismissed with prejudice. Summary judgment is denied to NMH on the portions of the FLSA and IMWL claims pertaining to meal periods and post-shift work.

August 10, 2011                                          _____
                                                          United States District Judge