UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER DEMARCO, an individual, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) 10 C 397 ) ) Judge Feinerman |
| vs. | ) ) |
| NORTHWESTERN MEMORIAL HEALTHCARE and NORTHWESTERN MEMORIAL HOSPITAL, | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer DeMarco brought this lawsuit against Defendants Northwestern Memorial Hospital ("NMH") and Northwestern Memorial Healthcare, alleging that she and others similarly situated were denied overtime pay in violation of, among other things, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. On Defendants' motion for summary judgment, the court dismissed with prejudice all claims except the portions of the FLSA and IMWL claims against NMH pertaining to the work DeMarco allegedly performed during meal breaks and after her shift. Docs. 80, 83. Now before the court is DeMarco's motion to conditionally certify an FLSA collective action under 29 U.S.C. § 216(b). DeMarco's brief and proposed class notice make clear that the proposed collective action concerns only the FLSA meal break claim; no mention is made of the post-shift claim. Doc. 42-1 at 3; Doc. 43 at 2-3. Familiarity with the court's summary judgment opinion (Doc. 83), which provides the necessary background of the meal break claim, is assumed.

-1-

DeMarco proposes the following class: "All persons employed (within the three years preceding the sending of notice) on a non-exempt, hourly-compensated basis by [NMH], who were not covered by a collective bargaining agreement with NMH." Doc. 42 at 1. FLSA permits an action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," provided that the similarly situated employees consent in writing to join the action. 29 U.S.C. § 216(b). The requirement that employees be "similarly situated" does not demand that they be identical in "job titles, functions, or pay," *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008), but instead turns on "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns," *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). The central concern is whether "there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on collective basis." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); *see also Molina v. First Line Solutions, LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007).

Courts generally take a two-step approach in deciding whether employees are "similarly situated" for purposes of § 216(b). *See Mielke*, 313 F. Supp. 2d at 762 & n.2 (citing cases). At the first stage, the court applies a lenient standard, requiring the putative lead plaintiff to make a "minimal showing" that other employees are similarly situated. *Id*. at 762; *see also Anyere v. Wells Fargo Co., Inc.*, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010) ("[A] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (brackets in original, internal quotation marks omitted). Although the standard is lenient, a "modest factual showing … cannot be founded

solely on allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Anyere*, 2010 WL 1542180, at *2. If that standard is satisfied, the collective action is conditionally certified, and notice is sent to potential plaintiffs to inform them of the suit and provide the opportunity to opt in. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-74 (1989); *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) ("The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action.").

The second stage of the § 216(b) process generally occurs after the opt-in period has closed and after discovery is taken, and typically is prompted by the defendant's motion to decertify the collective action. At that point, the court undertakes a "more stringent" review of whether the similarly situated requirement is satisfied. *Mielke*, 313 F. Supp. 2d at 762; *see also Heckler*, 502 F. Supp. 2d at 779 ("If the Court determines that such similarities do not exist, it may revoke a conditional certification."). In most cases, "rigorous[] review[ of] whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action" does not take place "until potential plaintiffs have been given a chance to 'opt in' to the collective action and discovery is complete." *Persin v. Careerbuilder, LLC*, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005); *see also Gambo v. Lucent Techs., Inc.*, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005) ("The possibility of a fact-intensive inquiry into whether all members of the eventual putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis

might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage.").

NMH contends that the more stringent review should be applied here because DeMarco has taken some discovery and because NMH has tendered evidence suggesting that few if any employees are similarly situated to DeMarco; this evidence, NMH maintains, renders the second stage inquiry a foregone conclusion, making class notice and an opt-in period an unnecessary and futile endeavor. Although more stringent review may be applied on a motion for conditional certification where substantial discovery already has taken place, *see Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004); *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004); *Moriksy v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000); *Pfohl v. Farmers Ins. Grp.,* 2004 WL 554834, at *2-3 (C.D. Cal. Mar. 1, 2004), that course is inappropriate here. The discovery taken by DeMarco has been limited to NMH's designees for the purpose of determining its policies and practices regarding the thirty-minute meal break deductions. Although NMH submits declarations from some employees averring that they were not forced to perform uncompensated work during meal periods, DeMarco has not had the chance to depose or seek written discovery regarding those employees and others whom she claims are similarly situated. The present record is far too limited to justify applying the more stringent review to DeMarco's conditional certification motion. *See Betancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964, at *12-13 (N.D. Ill. Apr. 21, 2011) (rejecting application of heightened standard where three depositions had been taken, initial disclosures had been exchanged, and defendant had submitted twenty-three affidavits from employees who had not been deposed).

Turning to the merits, DeMarco has adduced evidence sufficient at the first stage of the § 216(b) process to show that there are similarly situated NMH employees with similar meal break-related overtime claims. In her declaration and deposition, DeMarco averred that she and other nurses in her unit were frequently interrupted during their meal periods with work-related tasks, that the "cancel lunch" button was not pressed because it just "wasn't done," and that she made her managers aware of her and her colleagues' inability to take uninterrupted meal breaks. DeMarco also averred that nurses performed work during meal breaks in plain sight of NMH management. Although DeMarco's *direct* knowledge of prevailing conditions outside her unit is a bit thin—she specifically identified only one nurse outside her unit who was unable to take uninterrupted meal breaks—other evidence suggests a widespread meal break problem at NMH. For example, at a 2009 staff meeting, participants discussed NMH's "Take a Break Project" and a manager solicited "ideas … on how that [ensuring that nurses take breaks] could be better done." Doc. 68-1 at 15, 26. The fact that NMH felt it necessary to institute a "Take a Break Project" indicates, strongly enough for the first-stage inquiry, that the meal break problem extended beyond DeMarco's unit and affected nurses throughout the hospital.

NMH's objections to conditional certification turn largely on its contention that its policies and practices do not violate FLSA. That contention was addressed, and rejected, in the summary judgment opinion. Doc. 83. At this point of the litigation, DeMarco has adduced evidence sufficient to permit a reasonable factfinder to conclude that NMH's overtime practices violate FLSA's overtime requirements. One argument not directly addressed in the summary judgment opinion is NMH's submission that because its *official* policy provides that the thirty-minute lunch deduction should be cancelled if a meal break is interrupted, conditional certification may be granted only if DeMarco demonstrates that NMH had a "policy-to-violate-

the-policy." Doc. 57 at 13. The "policy-to-violate-the-policy" locution, deployed in some cases, *see Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *4-5 (D. Minn. June 15, 2009) (internal quotation marks omitted), simply conveys the commonsense notion that an employer with a lawful overtime policy can be held liable under FLSA if the plaintiff shows that the employer had a *practice* of violating, disregarding, or failing to enforce that policy. *See Kimbell v. Dynamic Strategy, Inc.*, 2009 WL 1651431, at *5 (M.D. Tenn. June 12, 2009) ("[A]lthough the Defendant had a written policy in place to ensure that time records were edited to reflect missed meal periods, this policy was ignored on numerous occasions. … Accordingly, the Court concludes that the proof before the Court satisfies the 'modest factual showing' needed [for conditional certification].") (internal quotation marks omitted). As explained in the summary judgment opinion, DeMarco has made that showing here.

Although conditional certification is warranted, DeMarco's proposed class is overbroad. Her evidentiary submissions are limited to nurses and other direct patient care providers whose duties, by their nature, often resulted in interrupted meal breaks. DeMarco presents no evidence, and does not raise even a permissible inference, that similar conditions were faced by employees not focused directly on patient care. The court may narrow the lead plaintiff's proposed opt-in class where the first-stage evidence provides no tangible support for including certain employees in the class. *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 208-09 (N.D.N.Y. 2009) (limiting conditional class to employees responsible for patient care because other employees did not experience work conditions requiring work during breaks); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162-63 (N.D.N.Y. 2008). Accordingly, consistent with NMH's fall-back argument (Doc. 57 at 8 n.3, 16), conditional certification will be limited to nurses and other direct patient care providers.

Finally, NMH registers objections to the notice (Doc. 42-1) that DeMarco proposes to send to the conditional class. The most efficient course at this point is to have the parties meet and confer in an effort to formulate an agreed notice and an agreed means of providing notice to the conditional class. *See Betancourt*, 2011 WL 1548964, at *14; *Fenger v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 199 (N.D.N.Y. 2009). That said, the parties should ensure that the case caption appears on the first page of the notice. *See Anyere*, 2010 WL 1542180, at *4-5; *Jirak*, 566 F. Supp. 2d at 851; *Olmsted v. Residential Plus Mortg. Corp.,* 2008 WL 5157973, at *4 (N.D. Ill. Dec. 9, 2008). The notice also should set forth a deadline for opting in. *See*, *e.g.*, *Smallwood v. Ill. Bell. Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010). And, of course, the notice should reflect the narrowed class described above.

For these reasons, DeMarco's motion for conditional certification is granted in part and denied in part. The court conditionally certifies a § 216(b) collective action consisting of: All persons employed (within the three years preceding the sending of notice) by NMH on a non-exempt, hourly-compensated basis as direct patient care providers, who were not covered by a collective bargaining agreement with NMH. The parties shall confer regarding the content of the § 216(b) notice and the means of distributing the notice, and shall submit either a joint proposal or competing proposals by August 23, 2011. After the opt-in period closes and further discovery is taken, NMH may prompt the more stringent, second-stage inquiry by moving to decertify the conditionally certified class. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008).

August 10, 2011

_____
United States District Judge