IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER DEMARCO, an individual, on behalf of herself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) NORTHWESTERN MEMORIAL ) HEALTHCARE and NORTHWESTERN ) MEMORIAL HOSPITAL, ) ) Defendants. ) | Civil Action No.: 10-cv-397<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Plaintiffs, by and through the undersigned counsel, submit this Memorandum of Law in support of their Unopposed Motion For Preliminary Approval Of Class And Collective Action Settlement.

**I.      BACKGROUND OF THE LITIGATION**

On January 20, 2010, Class Counsel filed this action on behalf of Named Plaintiff/Class Representative Jennifer DeMarco, and others similarly situated who were employed by Northwestern and who were subject to an automatic meal period deduction (the "Litigation"). The Complaint alleged, *inter alia*, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, as well as

1

unjust enrichment, based on Plaintiff's and the putative class members' alleged work during meal periods and after the end of their work shifts.

Northwestern filed a motion to dismiss the Complaint for failure to state a claim, which the Court denied on July 12, 2010. Defendant thus answered on July 26, 2010. The parties then engaged in further investigation and preliminary discovery. Plaintiff moved for conditional certification of the FLSA collective action. In turn, Defendant moved for summary judgment on Plaintiff's individual claim. On August 10, 2011, the Court granted in part Defendant's motion for summary judgment, but denied it as to Plaintiff's overtime claim. In particular, the Court granted summary judgment as to Plaintiff's claim brought pursuant to the IWPCA. Consequently, this claim was dismissed and not part of the conditionally certified collective action class under 29 U.S.C. § 216(b), which the Court certified that same day. Specifically, the Court conditionally certified a collective class consisting of "All persons employed (within the three years preceding the sending of notice) by NMH on a non-exempt, hourly-compensated basis as direct patient care providers, who were not covered by a collective bargaining agreement with NMH," as to claims of work during meal breaks (the "FLSA Class").

In October of 2011, Notice was disseminated to all members of the FLSA Class and consents to join the collective action were filed on behalf of one-hundred-forty individuals. Twenty-one individuals who filed consents were voluntarily dismissed from the case on May 31, 2012; seventeen were voluntarily dismissed on September 18, 2012; and eleven were voluntarily dismissed on October 1, 2012. In total, ninety individuals who filed consents remained in the case, having submitted consents to join the Litigation, in addition to the Class Representative, Jennifer DeMarco ("FLSA Opt-In Plaintiffs").

In light of the discovery conducted, the time and expense associated with future discovery, and the challenges and risks associated with a trial of this matter, the parties elected to engage in settlement discussions. In connection therewith, counsel for the parties exchanged information and data, and engaged in good faith negotiations on October 24, 2012, presided over by the Honorable Morton Denlow, a former federal magistrate judge and highly-regarded mediator. The parties worked to narrow the issues, identify areas of agreement, and make additional concessions when appropriate, all of which was overseen by Judge Denlow. With Judge Denlow's assistance, the parties reached an agreement to settle all material aspects of the Class Action Litigation, subject to the Court's preliminary and final approval under Rule 23 of the Federal Rules of Civil Procedure and its supervision and approval under the FLSA. Following several months of further negotiations to finalize the details of the proposed settlement, on or about May 16, 2013, the parties executed a Class Action Settlement Agreement, a true and correct copy of which is appended to the parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement as Exhibit 1.

## II.  THE TERMS OF THE SETTLEMENT

Under the terms of the Settlement Agreement, Defendant has agreed to deposit a gross settlement amount of one million nine hundred thousand dollars ($1,925,000.00) into a settlement account. The parties have agreed that this settlement account will be used to pay Court-approved settlement payments of the claimants, and the attorneys' fees, costs, and litigation expenses of Class Counsel, as awarded by the Court.

Under the terms of the Settlement Agreement, the parties have agreed that the settlement account will be distributed as follows: Claimants who are FLSA Opt-In Plaintiffs, other than Plaintiff/Class Representative Jennifer DeMarco, shall partake in two hundred twenty-five

3

thousand dollars ($225,000.00) (the "FLSA Class Payment Fund"). The FLSA Payment Fund shall be calculated for all FLSA Opt-In Plaintiffs, except Class Representative/Plaintiff Jennifer DeMarco, in a manner whereby each FLSA Opt-In Plaintiff shall receive a pro-rata distribution based upon that individual's weeks worked on a non-exempt, hourly compensated basis as a direct patient care provider, who was not covered by a collective bargaining agreement with Northwestern during the class period as a percentage of the total such weeks worked by all of the FLSA Opt-In Plaintiffs during the class period. Only weeks where the employee worked 37 actual hours or more will qualify as "weeks worked" for purposes of the calculation, unless the employee was eligible for overtime after eight hours in a day and eighty hours in a two-week period ("8/80 employees"). For 8/80 employees only two-week pay periods where the employee worked 74 actual hours or more will qualify. For 8/80 employees, each qualifying two-week pay period will count as two "weeks worked" under the formula. The FLSA Opt-In Plaintiff shall receive the same corresponding percentage of the FLSA Class Payment Fund. The actual payments shall be calculated so that the FLSA Opt-In Plaintiffs each receive a ratable amount of the FLSA Payment Fund. The intent of this calculation is to disburse all of the FLSA Class Payment Fund without reversion. Pursuant to the terms of the Settlement Agreement, no Claimant shall be entitled to a windfall under the Agreement.

Claimants under the State Law Class,[1] including Plaintiff/Class Representative Jennifer DeMarco, shall partake in their share of the class payment fund once Class Counsel's fees and costs, not to exceed 30% of the settlement fund and as approved by the Court, have been taken out, and Jennifer DeMarco's incentive award has been taken out (the "State Law Class Payment Fund."). The parties have agreed that Class Representative/Plaintiff Jennifer DeMarco shall

---

[1] The "State Law Class" consists of Plaintiff/Class Representative Jennifer DeMarco and all members of the FLSA Class who worked in Illinois at any time between January 20, 2007 and October 24, 2012, and who, are not FLSA Opt-In Plaintiffs in the Litigation.

4

receive $5,000.00 from the settlement amount as an incentive payment ("Incentive Award") and because she has agreed not to be a member of the FLSA Collective for purposes of the settlement agreement. Such payment to DeMarco will be in addition to any payment she receives by virtue of making a claim as a State Law Class Member.[2]

The State Law Class Payments shall be calculated for all members of the State Law Class, including Jennifer DeMarco, during the class period in a manner whereby each State Law Class Member who submits a timely claim form shall receive a pro-rata distribution based upon that individual's weeks worked on a non-exempt, hourly compensated basis as a direct patient care provider, who was not covered by a collective bargaining agreement with Northwestern during the class period as a percentage of the total such weeks worked by all of the State Law Class Members during the class period. Only weeks where the employee worked 37 actual hours or more will qualify as "weeks worked" for purposes of the calculation, unless the employee was eligible for overtime after eight hours in a day and eighty hours in a two-week period ("8/80 employees"). For 8/80 employees only two-week pay periods where the employee worked 74 actual hours or more will qualify. For 8/80 employees, each qualifying two-week pay period will count as two "weeks worked" under the formula. The claimant shall then receive the same corresponding percentage of the State Law Class Payment Fund after any award of attorneys'

---

[2] "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing *In re Continental*, 962 F.2d at 571). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citing *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993)).

Courts in this Circuit have approved incentive awards as high as $20,000 per Representative Plaintiff. *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 2004 WL 287902, *3 (S.D. lll. 2004). An incentive award of $5,000 for the Class Representative here is well within the range of awards commonly approved. *See, e.g., Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, *2 (S.D. Ill. 2006) (holding that incentive award of $3,000 was appropriate); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 2001 WL 1568856, *4 (N.D.lll. 2001) (approving incentive award of $7,500); *Gaskill v. Gordon*, 1995 WL 746091, *4 (N.D. lll. 1995) (awarding named plaintiffs $6,000 each in incentive awards).

5

fees and expenses and incentive award have been deducted. The unclaimed meal breaks for the FLSA Opt-In Plaintiffs shall be excluded from this calculation. The intent of this calculation is to disburse all funds without reversion. Pursuant to the terms of the Settlement Agreement, no Claimant shall be entitled to a windfall under the Agreement.

### III. THE COURT SHOULD ISSUE THE PROPOSED ORDER PRELIMINARILY APPROVING THE SETTLEMENT

#### A. Settlement Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy … favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here, *i.e.*, individual litigation, would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

6

> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.,* at § 21.632-34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of the class' interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

The parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25.

The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle,* 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the "formal fairness hearing," or final Settlement approval hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.,* at §§ 13.14,

21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

### B. The Criteria For Preliminary Settlement Approval Are Satisfied

#### 1. *The Proposed Settlement Offers A Beneficial Resolution To This Litigation, Thus Warranting Both This Court's Preliminary Approval And An Opportunity For The Class Members To Consider Its Terms*

Settlement of class action litigation is favored by the federal courts. *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). In deciding whether a class action should be approved, courts must determine whether the proposed settlement is fair, reasonable, and adequate. *Id.* Courts in this Circuit consider the following factors in evaluating the fairness of a class action settlement: the strength of plaintiffs' case compared to the amount of the settlement; settling defendants' ability to pay; complexity, length and expense of further litigation; the amount of opposition to the settlement; evidence of collusion; opinions of counsel; and the stage of the proceedings and amount of discovery completed.[3] *Id.; Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980). Moreover, the settlement must be viewed in its entirety rather than focusing on any individual component. *Armstrong,* 616 F.2d at 315. It must also be considered in the light most favorable to the settlement. *Id.* The proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits. *See, e.g., Mars Steel Corp. v. Cont. Ill. Nat''l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987). As the Seventh Circuit has written:

> Because settlement of a class action, like any litigation, is basically a bargained for exchange between litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

---

[3] Each of these factors will be addressed specifically and in detail in the parties' forthcoming final approval submissions prior to the formal fairness hearing.

8

*Armstrong,* 616 F.2d at 315. A strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,* 212 F.R.D. 400, 410 (E.D. Wis. 2002). Here, where the proposed settlement was achieved via formal mediation overseen by a former United States Magistrate Judge, and was finalized through several months of additional discussions between counsel, there can be no question that "the settlement is the result of extensive arm's-length negotiations."

### 2. *The Proposed Settlement Is The Product Of Serious, Informed, And Arm's-Length Negotiations*

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace,* 671 F. Supp. 819, 822 (D. Mass. 1987) ("where... a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular. Counsel for all parties are experienced in the litigation, certification, trial, and settlement of wage and hour cases, including nationwide class actions similar to this case. The parties in this matter reached an equitable settlement after substantial discovery and motions practice, and after arm's-length negotiations assisted by a private and neutral mediator. The parties and all counsel believe that the proposed settlement agreement provides a fair and reasonable resolution of the litigation.

### 3. *The Settlement Provides Substantial Relief For Class Members And Treats All Class Members Fairly*

The settlement provides substantial relief for all Class Members. All eligible members of the two settlement classes who timely submit proper claim forms to the settlement administrator

will receive a cash payment based on the formulas set forth in the settlement agreement. The settlement treats all FLSA Opt-In Plaintiffs and members of the State Law Class in a similar manner, based on the length of their employment by Defendant, the number of hours they worked, and their hourly rate of pay.

### 4. *The Risks Of Continued Litigation Are Substantial*

While Class Counsel continues to believe that Plaintiffs' and the putative class members' claims are meritorious, Plaintiffs and the putative class face real risks if this litigation continues. The risks of litigation if this matter were not resolved include the risk of a defense verdict and/or the Court's refusal to certify the Litigation as a Rule 23 class action or to continue its certification of this case as an FLSA collective action. Indeed, federal courts have recently decertified and/or refused to finally certify actions involving substantially analogous claims. *See, e.g., Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 355 (N.D. Ill. 2012) (granting defendants' motion to decertify FLSA collective action, and denying plaintiffs' motion to certify IMWL claim under Rule 23); *Creely v. HCR ManorCare, Inc.*, 3:09-CV-2879, 2013 WL 377282 (N.D. Ohio Jan. 31, 2013) (granting defendants' motion to decertify and denying plaintiffs' motion to certify). These are among the myriad issues that Plaintiffs would face if the litigation continued and this fact weighs in favor of settlement.

### C. The Parties' Proposed Notice Programs

"Rule 23(e)(l)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(l), (b)(2), or (b)(3)." *Manual for Compl. Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent Class Members, the Court must

provide the best notice practicable to Class Members. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12, 70 S. Ct. 652, 94 L. Ed. 865 (1985); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-175, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950).

In this case, the Notice and Claim Forms proposed by the parties, attached to the Settlement Agreement filed herewith, satisfy these criteria. The proposed Notice and Claim forms describe the nature, history and status of the Litigation; set forth the definition of the Class; state the class claims and issues; disclose the right of Class members to seek exclusion from the Class or to object to the proposed settlement as well as the deadlines for doing so and warns of the binding effect of the settlement approval proceedings on people who remain in or join the Class. In addition, the Notice describes the terms of the proposed settlement and provides contact information for Class Counsel, and also identifies the fee that they propose to request from the Court. The Notice also discloses the time and place of the final fairness hearing and the procedures for commenting on the settlement and/or appearing at the hearing. The contents of the notice therefore satisfy all applicable requirements.

    **D.    Scheduling A Final Approval Hearing Is Appropriate**

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the settlement, and offer argument in support of final approval. In addition, Class Members, or their counsel, may be heard in support of or in opposition to the settlement agreement. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final approval order and judgment under Rule 23(e). The parties respectfully request that the

Court set a date for a hearing on final approval following entry of the Preliminary Approval Order.

**V.      CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF UP TO THIRTY PERCENT OF THE SETTLEMENT FUND**

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees is the percentage of the fund method. *See Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 572-74 (7th Cir. 1992)*, later proceeding,* 985 F.2d 867 (7th Cir. 1993)*.* To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33 1/3% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.,* No. 02-CV-1109-DRH, 2004 WL 768658, *1 (S.D. Ill. Mar. 19, 2004). Consequently, Class Counsel's request for up to thirty percent of the Settlement Fund as attorneys' fees should be approved.[4]

**VI.     CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement, enter the Proposed Order (attached to the Settlement Agreement filed herewith), and schedule a formal fairness hearing on final settlement approval as the Court's calendar permits.

---

[4] In advance of the final approval hearing, Class Counsel will submit a detailed Petition for Award of Attorneys' Fees and Costs justifying the reasonableness of the fees requested.

Dated: May 29, 2013

Respectfully submitted,

JENNIFER DEMARCO, an individual, on
behalf of herself and others similarly situated

By */s/ Gary F. Lynch*
    One of Her Attorneys
Gary F. Lynch
CARLSON LYNCH LTD
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
(724) 656-1555
(724) 656-1556

Gerald D. Wells, III
FARUQI & FARUQI, LLP
101 Greenwood Ave. Suite 600
Jenkintown, PA 19046
(215) 277-5770
(215) 277-5771

Marvin A. Miller
MILLER LAW LLC
115 South LaSalle St., Suite 2910
Chicago, IL 60603
(312) 332-3400
(312) 676-2676